# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Gracie Technologies, Inc., Fraternal Order : 
of Eagles Conemaugh Aerie No. 1811, : 
                    Appellants : 
                               : 
              v. : No. 627 C.D. 2019
                         : ARGUED: February 13, 2020
Commonwealth of Pennsylvania : 


BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
                HONORABLE MICHAEL H. WOJCIK, Judge
                HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge


## OPINION NOT REPORTED

**MEMORANDUM OPINION BY**
**SENIOR JUDGE LEADBETTER**                    **FILED: March 13, 2020**


         Gracie Technologies, Inc. (Gracie Technologies), and the Fraternal Order of Eagles Conemaugh Aerie No. 1811 (Fraternal Order of Eagles) appeal from an order of the Court of Common Pleas of Cambria County (trial court) denying their motion for return of seized property from the Commonwealth, namely five SkillTouch Multi-Game (SkillTouch) machines and $1,076 in cash seized from the Fraternal Order of Eagles. Gracie Technologies and the Fraternal Order of Eagles argue that the SkillTouch machines are games of skill and not gambling machines, as found by the trial court.

         Upon a complaint of illegal gambling, a Pennsylvania State Police Liquor Control Enforcement officer conducted several undercover visits to the Fraternal Order of Eagles from December 2016 to June 2017. During those visits, the officer played several games on the SkillTouch machines. These machines required consideration for play and rewards (i.e., money) were awarded based on his

play.  In June 2017, at the conclusion of the investigation, the SkillTouch machines in question and money were seized.

The SkillTouch machines contained thirteen game themes comprising three types of games, which are described in the trial court's opinion. [*See* Op., *Gracie Techs., Inc. v. Commonwealth*, (C.C.P. Cambria, No. MD 162-2017, filed April 26, 2019) (Bernstein, J.) (attached hereto)].

In August 2018, QP Industries, Inc. and the Fraternal Order of Eagles filed a motion for return of seized property pursuant to Rule 588 of the Pennsylvania Rules of Criminal Procedure.  An unopposed motion to substitute Gracie Technologies for QP Industries, Inc., was granted in June 2018.  After a hearing during which both parties presented expert testimony and briefing, the trial court denied the motion for return of seized property.

On appeal,[1] Gracie Technologies raises the following issues:

1. Whether the [t]rial [c]ourt abused its discretion and erred as a matter of law, when it determined that chance predominated over skill with respect to the SkillTouch machine, based on the [c]ourt's primary focus that the outcome was in a finite sequential order?

2. Based upon expert testimony, did Gracie [Technologies] meet the standard for the predominant factor test that skill predominated rather than chance with respect to the subject skill game?

(Appellants' Br. at 5.)

---

[1] Our review in this case of forfeiture is limited to determining whether the trial court's findings of fact are supported by competent evidence and whether the trial court committed an error of law.  *Commonwealth v. $301,360.00 U.S. Currency*, 182 A.3d 1091, 1096 n.2 (Pa. Cmwlth. 2018).

The trial court ably addressed the issues in the case based on its findings and the controlling statute, 18 Pa. C.S. § 5513(a), as well as binding precedent, *see Commonwealth v. Two Electronic Poker Game Machines*, 465 A.2d 973 (Pa. 1983); *see also Commonwealth v. Dent*, 992 A.2d 190 (Pa. Super. 2010) (holding that Texas Hold 'Em poker was predominantly a game of chance because "while . . . skill can determine the outcome of a poker game, players are subject to defeat at the turn of the cards") (footnote omitted).  (Op., *Gracie Techs. Inc.*)[2]

Given the trial court's supported findings of fact based on expert testimony, we agree with its conclusion that the machines in question are gambling machines prohibited under the statute. Accordingly, we affirm based on the trial court's opinion.

_____
**BONNIE BRIGANCE LEADBETTER,**
Senior Judge

Judge Crompton did not participate in the decision for this case.

---

[2] As noted by the trial court in its statement in lieu of opinion responding to Gracie Technologies' motion under Rule 1925(a) of the Pennsylvania Rules of Appellate Procedure, it is not bound by the Superior Court's unpublished opinion in *Commonwealth v. One Jersey Hold 'Em Machine Serial No. DDGPA0003* (Pa. Super., No. 309 EDA 2014, filed Dec. 23, 2014) (affirming trial court's finding that a game was a game of skill), or two common pleas decisions cited in the briefs. Neither is this Court.

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Gracie Technologies, Inc., Fraternal Order : 
of Eagles Conemaugh Aerie No. 1811, : 
Appellants : 
: 
v. : No. 627 C.D. 2019
: 
Commonwealth of Pennsylvania : 

## **O R D E R**

AND NOW, this 13th day of March, 2020, the Order of the Court of Common Pleas of Cambria County (Bernstein, J.) (C.C.P. Cambria, No. MD 162-2017, filed April 26, 2019) in the above-referenced matter is AFFIRMED.

 

**BONNIE BRIGANCE LEADBETTER,**
Senior Judge

IN THE COURT OF COMMON PLEAS OF CAMBRIA COUNTY, PENNSYLVANIA
CRIMINAL DIVISION

GRACIE TECHNOLOGIES INC.,
FRATERNAL ORDER OF EAGLES
CONEMAUGH AERIE NO. 1811

    Movants,

    v.

COMMONWEALTH OF PENNSYLVANIA,

    Respondent.

:   Case No. MD 162 – 2017
:
:
:
:
:
:
:
:
:
:
:
:

FILED FOR RECORD
2019 APR 26 P 2:00
CLERK OF COURTS
CAMBRIA COUNTY PA

************

For Movants:    John P. Corcoran, Jr., Esq.
For the Respondent:    Andrew J. Jarbola, Esq.

************

## OPINION AND ORDER

This case comes before this Court via Gracie Technologies, Inc. and Fraternal Order of Eagles Conemaugh Aerie No. 1811's Motion for Return of Seized Property Pursuant to Pa. R.Crim.P § 588. For the following reasons Movants' Motion is hereby **DENIED**.

## STATEMENT OF FACTS

From December 3, 2016, to June 26, 2017, Officer Stevanus, Pennsylvania State Police Bureau of Liquor Control Enforcement, conducted several visits to the Fraternal Order of Eagles Conemaugh No. 1811 to investigate a complaint of illegal gambling activity. During his visits to the Fraternal Order of Eagles, he played several gaming machines. These machines required consideration for play and rewards were awarded based on his play. As a result of his investigation, on June 26, 2017, Officer Stevanus' seized the sum of $1,076.00 in

1

US currency, and five (5) SkillTouch Multi-game ("SkillTouch") machines from the Fraternal Order of Eagles.

On August 31, 2018, QP Industries, LLC. and the Fraternal Order of Eagles filed this Motion for Return of Seized Property. QP Industries argued that because the SkillTouch machines require players to interact with the machine, skills to play the machine and achieve the desired outcome, and the outcome (win/loss) is not automatically generated by chance, the SkillTouch machines are games of skill and not gambling machines within the Commonwealth's definition. Gracie argues that pursuant to Pa. R.Crim.P. §588, the Commonwealth must return the SkillTouch machines and the cash seized. QP Industries was substituted as a party to the action by Gracie Technologies Inc. (hereinafter "Gracie").[1] On November 29, 2018, counsels argued the merits of the case before this Court; and, in January 2019 parties filed briefs in support and in opposition to returning the SkillTouch machines and the cash seized.

## ANALYSIS

Gracie argues that because the SkillTouch machines require user interaction and skills to achieve a winning goal, they are not games of chances. TR., 11/29/2018, P.73. More precisely, Gracie argues that because the skills of speed, dexterity, task completion, prize recognition and strategy, *inter alia*, are necessary skills to play and achieve the "desired prize" (maximize winnings), the machines are games of skills and not gambling machines.

---

[1] Court Order dated June 15, 2018.

2

The SkillTouch machines have a timing setting programed into the system that gives a player twelve (12) seconds to make a determination, *e.g.* "nudging"[2] or "picking."[3] *Id.* at 74. Gracie submits that the SkillTouch machine speed component requires players to make a determination within the allotted time frame to achieve the desired prize. For example, if a player makes that determination within the first six (6) seconds (between the twelfth and seventh second of the timer) the player wins a full prize. *Id.* If the player, however, makes that determination between six (6) seconds and one (1) second remaining on the timer, the player only wins half of the prize. *Id.* If the player does not make a determination before the time expires, the player does not win,[4] save for a penny if the player picks the "Take a penny" function. *Id.* at 34. Thus, according to Gracie, speed is instrumental to winning and achieving the desired prize, *i.e.* maximizing winnings. Task completion (making a determination) and dexterity are also essential to winning or maximizing one's winnings.

With regard to the prize recognition and strategic skills, Gracie argues that the prize recognition and strategy skill are implemented by the player selecting the "Prize Viewer" function. *Id.* at 75. Prior to playing a game, the player has the option to select the prize viewer option; this lets the player know what the reward for the next game played would be. The player can then chose to play that game or exit that game (based on indicated reward). *Id.* Thus, Gracie submits that based on these interactions and skills, the SkillTouch machines are games of skills and not gambling devices. In sum, they argue that because skill, not chance, is

---

[2] The SkillTouch machines has a total of twelve (12) games. Some of the games are reel games. The "nudging" feature allows a player to nudge a reel up or down to accomplish a winning combination. Tr. 11/29/2018, p.37.
[3] In some games, such as Jewel Quest, the player has an option between picking same like items in a row to create a winning combination. The alleged skill here is that the more "like items" picked, the higher the award. *Id.* at 77.
[4] The "Take a Penny" function allows players to get a penny when the game produces a losing outcome. *Id.* at 34.

3

the predominate factor in winning or maximizing one's winnings, the SkillTouch machines are games of skill. This Court disagrees.

Pennsylvania's legislation has criminalized unlawful gambling. *See 18 Pa.C.S.A. § 5513.* "'[U]unlawful gambling' is any gambling that has not been authorized by the legislature." *Comm. v. Dent,* 992 A.2d 190, 197 (Pa. Super. 2010). There are "three elements necessary to gambling: consideration, a result determined by chance rather than skill, and a reward." *Comm. v. Two Elec. Poker Game Machines, et al.,* 465 A.2d 973, 977 (Pa. 1983). In determining whether a gaming machine is a game of chance or skill, the Courts must determine "the relative amounts of skill and chance present in the play of each machine and the extent to which skill or chance determines the outcome." *Id.* at 977. When the outcome is largely determined by chance, the element of chance predominates. *Id.* at 978.[5] If a gambling device "displays all three qualities, it will then be 'so intrinsically connected with gambling' as to be a gambling device *per se.*" *Id.*

Here, there is no dispute that consideration was required to play the SkillTouch machines and that the SkillTouch machines reward players based on their play. Thus, the issue for this Court to determine is the relative amount of skill and chance present in the play of the SkillTouch machines, and the extent to which skill or chance determines the outcome. *Two Electronic Poker Game Machine, supra,* is essential to our determination.

*Two Electronic Poker Game Machine* (hereinafter "*Two Electronic*") involved a poker gambling machine. Like our case, the only issue before the *Two Electronic* Court was the relative amounts of skill and chance present in the play and the extent to which skill or chance determined the outcome. In that case, the tavern's expert testified that by implementing the

---

[5] *Comm. v. Two Elec. Poker Game Machines,* 465 A.2d 973, 978 (Pa. 1983) ("we believe that the element of chance predominates and the outcome is largely determined by chance.")

4

"smart strategy"[6] skill he increased his odds of winning by a four and one half margin to one (4 1/2 to 1) over the standing pat strategy[7] which he called the "dumb strategy." *Id.* at 978. He concluded that skill was definitely a factor. *Id.* However, the expert conceded that "chance was also a factor both in determining the initial hand dealt and the cards from which one can draw." *Id.* The expert ultimately concluded that there was a "random element" present and he could not say how to apportion the amounts of skill and chance. *Id.*

In analyzing the amount relative that skill or chance controls the outcome, the Court contrasted between the skills necessary to play the gaming machine as opposed to playing poker in person. *Id.* The Court noted that the amount of skills necessary to play the Electro-Sport (*i.e.*, knowledge or probabilities) were not the same skills necessary to play poker with humans. And, in analyzing the extent to which skill or chance determines the outcome, the Court reasoned that, while skills, such as knowledge of probabilities, may improve a player's chance of winning or maximizing the winnings, they are not outcome determinative as are the skills needed to play poker with humans (holding, folding, bluffing and raising). The Court concluded that while "Skill can improve the outcome in Electro-Sport; it cannot determine it." *Id.*

Applying the predominant test, the Court concluded that the poker machines were gambling devices because "chance determines the ultimate outcome despite the presence of certain skill elements." *Id.* at 979. *Two Electronic,* stands for the proposition that even if skills can improve a player's chance of winning or maximizing the size of the winning, if chance ultimately determines the outcome then chance predominates.

---

[6] The expert, a Carnegie-Mellon University professor of statistics, called using his "knowledge of statistics" a "smart" strategy. *Two Elec. Poker Game Mahines, supra,* at 978.
[7] Standing pat on the initial hand dealt by the machine. *Id.*

5

In the case at bar, Gracie argues the skills such as speed, dexterity, task completion, prize recognition and strategy (including knowing when to walk away from a machine) are necessary to play, win, and to produce the desired outcome, *i.e.*, maximize a player's winnings. This is simply not sufficient to overcome the Commonwealth's showing that in the SkillTouch machines the outcome is predominantly determined by chance.

Nick Farley, Gracie's expert,[8] testified that certain skills are needed to interact with the SkillTouch machines. He testified that by using the prize viewer function, the player develops the skill of "shop[ing] for the best possible outcome." TR., 11/29/2018, P.150. This, in turn, develops the player's strategy of free will as the player can make a determination of whether to play a game with a losing outcome or cash out and walk away. *Id.* at 155. He added that performing necessary tasks such as nudging or picking (which the player is instructed on how to do so by the game's blinking arrows) develops knowledge of what would be the best opportunity for where the player should place his money. *Id.* at 151. The more the player performs this task, the more adept he becomes at winning. He also testified that performing these tasks in an expeditious manner (skill of dexterity and speed) helps the player get the full value prize rather than the half value prize, or no prize at all. *Id.* at 162.

Notwithstanding, Farley ultimately conceded that there is no amount of skill a player can input into playing the machine that will change the outcome or the reward, *Id.* at 154.[9] That is because, as he explained, the ultimate outcome and prizes are pulled from a finite pool of sequential outcomes that are generated by the SkillTouch machines software. *Id.* at 156.

---

[8] Nick Farley was qualified as an expert in the field of review and analysis of game systems.
[9] TR., 11/29/2019, P. 154:
   Deputy AG Jarbola: "And there is no amount of skill whatsoever that a player or patron could input to change that to actually having a winning outcome or an outcome for an award which is greater than the consideration?"
   Nick Farley: "Not on that terminal, but they can take their money and go to a different terminal."

6

This finite pool of sequential outcome predetermines losing outcomes, winning outcomes, and the different prize levels. *Id.* The outcomes are shuffled into the finite pool for random sequentially delivery. This, he described, is akin to shuffling a deck of cards and then drawing the cards from the shuffled deck in order. *Id.* at 157. And again, he testified that the outcomes and prizes are predetermined and there is no amount of skill a player possesses that can change the predetermined outcomes. *Id.* In fact, he added, changing these predetermined outcomes was outside the player's skills but fell within a skill of the computer programmer. *Id.* Moreover, the machine's prize values are determined by Gracie Technologies,[10] and "the patron can not affect what ultimately is built into the potential prizes. They can only affect whether they're going to get the full prize of not." *Id.* at 158. In other words, the only aspect of the SkillTouch machines play that is within the control of the player is whether or not the player will maximize his winnings. Maximum winnings are predetermined by Gracie's programmed prize value determination.

In order to find that the SkillTouch machines are a gambling device *per se*, the Commonwealth needs to show more than a substantial element of chance. *Two Elec. Poker Game Machine*, at 977 ("Showing of a large element of chance is not sufficient.") The Commonwealth must show that chance predominates. *Id.* To make this finding, the courts must balance the relative amounts of skill and chance present in the play, and the extent to which skill or chance determines the outcome. *Id.* at 978.

Here, like in *Two Electronic*, unquestionably some degree of skill is required to play the device. However, even if this Court accepts Gracie's argument that speed, dexterity, task completion, prize recognition and strategy are skills that can improve a player's chances of

---

[10] *Id.* at 157.

7

winning and achieving a desired prize (as was the case with knowledge of probabilities in *Two Electronic*), this Court cannot ignore the reality that chance ultimately determines losing outcomes, winning outcomes, and the different prize levels: which are programmed into the SkillTouch machine's finite pool for random sequential delivery. Furthermore, this Court cannot overlook the fact that there is no level of skill a player can employ to change the predetermined outcome or predetermined valued prize. Unlike *Two Electronic*, here, by employing the skills of speed, dexterity, task completion, prize recognition and strategy a player does not increase his odds of winning. In fact, a player only controls the amount of his winnings, and that too is limited to the predetermined maximum which is encoded into the software by a programmer. As in *Two Electronic*, here a large random element is always present, and it predominates.

Consequently, because the SkillTouch machine's outcome is predetermined in a sequential order, and there is nothing the player can do to overcome that outcome, it is this Court's finding that the SkillTouch machines are games of chance. Furthermore, because all three elements of gambling are met, the SkillTouch machines are so intrinsically connected with gambling and are therefore gambling devices *per se*. And now the Court issues the following ORDER.

8

IN THE COURT OF COMMON PLEAS OF CAMBRIA COUNTY, PENNSYLVANIA
CRIMINAL DIVISION

GRACIE TECHNOLOGIES INC.,          :     Case No. MD 162 – 2017
FRATERNAL ORDER OF EAGLES          :
CONEMAUGH AERIE NO. 1811           :
                                   :
          Movants,                 :
                                   :
     v.                            :
                                   :
COMMONWEALTH OF PENNSYLVANIA,      :
                                   :
          Respondent.              :

FILED FOR RECORD
2019 APR 26 P 3 08
CLERK OF COURTS
CAMBRIA COUNTY, PA

## ORDER

AND NOW, this 25th day of April, 2019, after review of Movants' Motion for Return of Seized Property Pursuant to Pa. R.Crim.P § 588, hearing, arguments by counsel, briefs, and the laws of Commonwealth of Pennsylvania, Movants' Motion is hereby **DENIED**.

BY THE COURT:

Tamara R. Bernstein, J.

COPIES TO:
☐ DEF.      ☐ C & F
☑ DA       ☐ SHERIFF
☐ ATTY.     ☑ OTHER
☐ PROB      Atty Jarbola A.G.
☐ PD
☐ JAIL
☐ JUDGE
☐ CA

IN THE COURT OF COMMON PLEAS OF CAMBRIA COUNTY, PENNSYLVANIA
CRIMINAL DIVISION

GRACIE TECHNOLOGIES INC.,        :    Trial Court Case No. MD 162 – 2017
FRATERNAL ORDER OF EAGLES        :
CONEMAUGH AERIE NO. 1811         :
                                 :    Commonwealth Court Docket NO:
                Movants/Appellant,        :    627 CD 2019
                                 :
        v.                       :
                                 :
COMMONWEALTH OF PENNSYLVANIA,    :
                                 :
                Respondent/Appellee.      :

**************

## STATEMENT IN LIEU OF OPINION

This matter arises from a Notice of Appeal filed by Gracie Technologies Inc.

("Movant" or "Appellant") to this Court's Opinion and Order filed on April 26, 2019, in

which this Court denied the Movant's Motion for Return of Seized Property Pursuant to PA.

R.Crim.P § 588.

In accordance to Pa. R.A.P. § 1925, this Court herein incorporates its Opinion filed on

April 26, 2019. Said Opinion clearly expresses this Court's reasoning for denying Movant's

Motion. After a thorough review of the evidence presented and the record, including: hearing,

testimony, argument of parties, briefs, and the laws of the Commonwealth of Pennsylvania,

this Court found that because chance predominates the outcome of the game in the machines

in question in this matter, the machines are games of chance, not skill.

In his Concise Statement of Errors Complained of On Appeal, Appellant complains

that this Court committed six errors of law. More specific, Appellant's challenges to this

Court, as expressed in paragraphs one (1), three (3), four (4), five (5), and six (6), go to this

Court's fact findings function, specifically the weight of the evidence and the credibility of witness, a matter that falls within the province of the fact finder. Consequently, said errors should be examined under an abuse of discretion standard of review. With regards to Appellant's challenge as expressed on paragraph two (2), this Court is not bound to follow the *Commonwealth v. One Jersey Hold'em Machines,* 2004 WL 10749241 (Pa. Super. 2014), because said case is an unpublished opinion with non-precedential value. Therefore, this challenge is without legal basis and should be quashed.

For the reasons set forth in its opinion, this Court's Opinion and Order of April 26, 2019, should be affirmed.

BY THE COURT:

Tamara R. Bernstein, J.

COPIES TO:
☐ DEF.    ☐ C & r-
PS ☑ DA    ☐ SHERIFF
Mail ☑ ATTY.    ☐ OTHER
☐ PO
☐ PD
☐ JAIL
☐ JUDGE
☐ CA

R. 0539a